UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY GELLER,

                    Plaintiff,                   Civil Action No. 17-13233

                                                Honorable David M. Lawson

v.                                          Magistrate Judge David R. Grand

STATE OF MICHIGAN, *et al.*,

                    Defendants,

UNITED STATES OF AMERICA,

                    Interested Party.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS TO DISMISS [53, 54, 55, 56] AND TO DISMISS ALL REMAINING CLAIMS

      The lead plaintiff in this action, Bradley Geller ("Geller"), is a licensed attorney, who claims he has focused his legal career on guardianship issues – including by working as a "legal services attorney, defending older adults faced with guardianship"; by "overseeing a probate court program"; and by otherwise writing, presenting, and advocating regarding matters of guardianship. (Doc. #60 at 108). While Geller may have significant experience with respect to guardianship matters and subjectively feel well-intentioned in commencing and pursuing this action, his complaint fails woefully to plead actionable claims against the many dozens of defendants he has named, many of whom are mentioned only in the caption.

      It is difficult to summarize the claims that Geller and his co-Plaintiff Ronald

Boucher ("Boucher") (collectively, "Plaintiffs") purport to bring in this action.  In the operative complaint, Plaintiffs repeatedly express general dissatisfaction with the way in which various counties, probate courts, judges, and "professional guardians" allegedly work in concert to undermine the rights of individuals subject to guardianship in the state of Michigan.  (Doc. #35).  However, Plaintiffs' allegations against the defendants are not specific and particularized; rather, they are sweeping in nature, claiming in only the broadest sense that professional guardians, who are financially compensated for their role, are wrongfully institutionalizing individuals who are capable of managing their own affairs; that the probate courts are rubber-stamping these guardianships rather than meaningfully ensuring that individuals' rights are protected; and that the counties and various state oversight entities are failing to intervene to ensure that this allegedly corrupt system – which Geller characterizes as a "good old boys club" – is dismantled.  Plaintiffs argue that the result is that "Defendants have inappropriately increased the number of individuals under guardianship, the number of individuals assigned a professional guardian, and the number of individuals institutionalized unnecessarily," in violation of a host of "federal and state statutes and Constitutional provisions."  (*Id.* at 32).

What Plaintiffs really are asking is for this federal Court to usurp the role of Michigan's probate and appellate courts, and make decisions in guardianship proceedings, which are exclusively within the province of those state courts.  (*See, e.g., id.* at 33-34, 36) (asking this Court to, among other things, order St. Clair County and the St. Clair County Guardian to "1. Cooperate with other agencies to immediately find an apartment or other suitable living arrangement for all those individuals in nursing homes for whom it serves

as guardian, and who can live in the community. . . 3. Resign as guardian for all individuals for whom it is guardian but who do not meet the statutory requirements for continuation of a guardian . . ." and to order the Michigan Attorney General to "Consider transferring the public administrator system to [the Michigan Supreme Court] or dismantling the system as a vestigial and a 'good old boys club.'").  Plaintiffs also want all guardianship proceedings to take place in a manner Geller approves of.  Indeed, he asks this Court to find, among other things, that "Current practices of probate courts violate state law; deny individuals liberty without due process; deny equal protection and reasonable accommodation . . . and result in unnecessary institutionalization." (*Id.* at 35).  But the law makes clear that this Court cannot perform the functions Plaintiffs are requesting of it; as one recent federal district court succinctly stated, "federal courts do not have subject matter jurisdiction over guardianship proceedings." *Renteria v. Cuellar*, No. 2:16-cv-01685-MCE-AC, 2016 WL 7159233, at *5 (E.D. Cal. Dec. 8, 2016).

Against this backdrop, now pending before the Court are the following four dispositive motions:

- A motion to dismiss filed by Defendants St. Clair County, St. Clair County Public Guardian, St. Clair County Probate Court, and Karry A. Hepting (collectively, the "St. Clair County Defendants") on February 19, 2019 (Doc. #53);

- A motion to dismiss filed by Defendants State of Michigan, Dana Nessel, Bridget McCormack, Robert Gordon, and Orlene Hawks (collectively, the "State Defendants") on February 22, 2019 (Doc. #54);

- A motion to dismiss filed by Defendants Washtenaw County and Washtenaw County Probate Court (collectively, the "Washtenaw County Defendants") on February 22, 2019 (Doc. #55); and

- A motion to dismiss filed by Public Administrators Alan May, George Heitmanis, Jon Munger, Jennifer Carney, Walter Sakowski, Heidi Aull, Thomas Fraser, and John Yun (collectively, the "Public Administrators") on February 26, 2019 (Doc. #56).

Plaintiffs filed a single response to all four dispositive motions on March 21, 2019. (Doc. #60). Subsequently, the St. Clair County Defendants, Public Administrators, Washtenaw County Defendants, and State Defendants filed reply briefs in support of their respective motions. (Docs. #62, #63, #64, #65). An Order of Reference was entered on August 27, 2018, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #11). Having reviewed the pleadings and other papers on file, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time. *See* E.D. Mich. L.R. 7.1(f).

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that all four of the pending motions to dismiss (**Docs. #53, #54, #55, #56**) be **GRANTED** and that all remaining claims be dismissed *sua sponte* for lack of subject matter jurisdiction.

## II.    REPORT

### A.    Background

On October 3, 2017, Geller commenced this action by filing a *qui tam* complaint under the False Claims Act, alleging various shortcomings within the Michigan guardianship system.[1] (Doc. #1). In his complaint, Geller also mentioned claims under 42

---

[1] On July 10, 2018, the United States filed a notice of its election to decline to intervene in this action. (Doc. #8).

U.S.C. § 1983, the Americans with Disabilities Act, the Racketeer Influenced and Corrupt Organizations Act, and the Michigan Medicaid False Claims Act.  (*Id.* at 22-26).  He sought injunctive relief against various non-parties, including the Michigan Supreme Court, the Michigan Attorney General, the Michigan Department of Licensing and Regulatory Affairs, and the Michigan Department of Health and Human Services.  (*Id.* at 26-36).

Subsequently, Geller and Boucher filed an amended complaint, which, although not docketed properly, was deemed filed as of September 28, 2018.  (Docs. #19, #20). Plaintiffs' amended complaint identified the defendants as follows:

> State of Michigan; William Schuette, Michigan Attorney General, in his Official Capacity; Stephen J. Markman, Chief Justice, Michigan Supreme Court, in his Official Capacity; Nick Lyon, Director, Michigan Department of Health and Human Services, in his Official Capacity; Shelly Edgerton, Director, Michigan Department of Regulatory Affairs, in her Official Capacity; Michigan Probate Courts; Public Administrators who are professional guardians; St. Clair County, Washtenaw County, All Counties.

(Doc. #20 at 1).

Then, on February 5, 2019, with this Court's permission, Plaintiffs filed a second amended complaint.  (Doc. #35).  This second amended complaint – which the Court was led to believe would simply identify by name eight individual defendants who previously had been identified only by title (one Michigan probate court judge and seven County Administrators who also serve as "professional guardians") (Doc. #31 at 2) – in fact added dozens of new parties, including every single probate court and county in the state of Michigan (Doc. #35 at 2-5).

Subsequently, four motions to dismiss were filed by various groups of defendants –

the St. Clair County Defendants, the State Defendants, the Washtenaw County Defendants, and the Public Administrators.  (Docs. #53, #54, #55, #56).  Although their arguments differ to some extent, all of the defendants argue that Plaintiffs' operative complaint should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and/or for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the Court agrees and finds that dismissal of Plaintiffs' complaint is appropriate.

### B.   Applicable Legal Standards

#### 1.   Federal Rule of Procedure 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the Court's subject-matter jurisdiction.  "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties:  a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994).  At issue here is a facial attack, which is a challenge to the sufficiency of the pleading itself. *Ritchie*, 15 F.3d at 598.  "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id*.  Under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive the motion to dismiss.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

#### 2.   Federal Rule of Procedure 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a plausible claim, the Court must accept the factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

**C.     Analysis**

In the second amended complaint, Plaintiffs assert federal claims for violation of: (1) the False Claims Act ("FCA"); (2) the Americans with Disabilities Act ("ADA"); (3) the Nursing Home Reform Act; (4) their due process and equal protection rights under the Fourteenth Amendment; (5) and their freedom-of-speech, freedom-of-association, and freedom-of-religion rights under the First Amendment. (Doc. #35). Plaintiffs also assert state law claims for violation of:   (1) the Michigan Medicaid False Claims Act ("MMFCA"); (2) the due process and equal protection clauses of the Michigan Constitution; (3) false imprisonment; and (4) conversion. (*Id.*). For the reasons set forth below, all of Plaintiffs' claims are subject to dismissal.

*1.     Plaintiffs'* Qui Tam *Claims Under the FCA and MMFCA*

In their second amended complaint, Plaintiffs plead *qui tam* claims under the FCA and MMFCA against *only* the Public Administrators. (Doc. #35 at 8 ("This is a *Qui Tam* action for damages and injunctive relief under the federal False Claims Act and the Michigan Medicaid False Claims Act against professional guardians who are paid with Medicaid funds but intentionally do not perform their statutory and constitutional duties."); Doc. #60 at 9 ("Plaintiff Bradley Geller brings a *qui tam* action for Medicaid fraud against seven public administrators and one former public administrator who serve as professional guardians and who receive federal and state funds as guardianship fees under Medicaid.")).[2]

---

[2] Previously, Geller agreed to dismiss his *qui tam* claim against the State. (Doc. #15 at 4).

Under the FCA, a private person may bring a *qui tam* civil action in the name of the federal government against any person who knowingly submits a false or fraudulent Medicaid claim. *See* 31 U.S.C. §§ 3730(b)(1), 3729(a)(1)(A)-(B). Similarly, under the MMFCA, a private person may bring a *qui tam* civil action in the name of the state against any person who knowingly submits a false or fraudulent Medicaid claim. *See* M.C.L. §§400.610a(1), 400.603(1)-(2), 400.612. Fraud claims under the FCA and MMFCA are subject to the heightened pleading requirements set forth in Fed. R. Civ. P. 9(b) and M.C.R. 2.112(B), respectively, "because 'defendants accused of defrauding the [] government have the same protections as defendants sued for fraud in other contexts.'"[3] *See Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)); *see also State ex rel. Gurganus v. CVS Caremark Corp.*, 496 Mich. 45, 69-70 (2014).

The purpose of the heightened pleading standard for fraud is to provide the defendants "with a more specific form of notice as to the particulars of their alleged misconduct." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007). Consistent with this purpose, the heightened pleading standard requires the plaintiff "to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz*, 341 F.3d at 563 (internal quotations omitted).

---

[3] Because the applicable federal and state court rules are nearly identical, the Court may rely on the standards applicable to the federal rule in analyzing the state rule. *See State ex rel. Gurganus v. CVS Caremark Corp.*, 496 Mich. 45, 70 n. 3 (2013).

The plaintiff cannot simply allege a complex and far-reaching fraudulent scheme; he must "also identify a representative false claim that was actually submitted to the government" pursuant to the scheme. *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 768 (6th Cir. 2016) (internal quotations omitted).

Alleging "specific false claims" is a "clear and unequivocal requirement" and an "indispensable element of a complaint that alleges a FCA violation[.]" *Bledsoe*, 501 F.3d at 504. A plaintiff fails to meet the heightened pleading standard if there is "no specific information about the filing of the claims themselves – nothing, that is, to alert the defendants to the precise misconduct with which they are charged and to protect [the] defendants against spurious charges of immoral and fraudulent behavior." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotations and alterations omitted). In other words, a plaintiff's failure to identify with particularity any actual false claims that the defendants allegedly submitted to the government is, ultimately, fatal. *See Bledsoe*, 501 F.3d at 504.

Here, Defendants argue that dismissal of Plaintiffs' *qui tam* claims against the Public Administrators is appropriate because these claims have not been pled with sufficient particularity. (Doc. #55 at 11-12; Doc. #56 at 31-35). In the second amended complaint, Plaintiffs aver that the Michigan Department of Health and Human Services "uses Medicaid funds to pay guardians for guardianship fees." (Doc. #35 at 16). Plaintiffs further indicate that the Department "is projected to expend millions of dollars in Medicaid funds in FY 2018 for guardianship fees, the lion's share paid to professional guardians." (*Id.* at 26). Plaintiffs further express a belief that "some professional guardians may receive

more than $250,000 per year in Medicaid-funded guardianship fees." (*Id.*). They then claim that "some professional guardians" are perpetrating Medicaid fraud. (*Id.* at 9). However, with respect to the Public Administrators – the sole defendants against whom Plaintiffs plead a *qui tam* claim – Plaintiffs allege only:

> *If* a health care provider bills Medicaid for tests or other services that the provider has not performed, the provider is perpetrating Medicaid fraud. In parallel fashion, *if* any professional guardian, including but not limited to [the Public Administrators], is paid fees through Medicaid but does not perform his or her statutory duties or otherwise violates state or federal law, he or she has committed Medicaid fraud.

(*Id.* at 33 (emphasis added)).

It is clear, then, that Plaintiffs have failed to plead the circumstances of an alleged Medicaid fraud with the particularity required by the applicable state and federal court rules. Plaintiffs do not allege, with specificity, any examples of false or fraudulent claims submitted by the Public Administrators to the state or federal government. Indeed, Plaintiffs do not actually accuse the Public Administrators of submitting any actual false or fraudulent claims; rather, they merely allege that "if" the Public Administrators neglected their statutory duties but nevertheless received Medicaid funds, then they would have committed Medicaid fraud. Because Plaintiffs have not pled Medicaid fraud *at all* – let alone *with particularity* – their *qui tam* claims under the FCA and MFCA should be dismissed.[4]

---

[4] Similarly, in their response to Defendants' motions to dismiss, Plaintiffs allege only that "[c]onceptually, the activities of DEFENDANT GUARDIANS" amount to Medicaid fraud because they "accept Medicaid funds for their services, but not one of them satisfies the duties set forth in [the] state statute, and each of them violates federal law." (Doc. #60 at 86-87; *see also id.* at 89-90 ("*If* an individual can live in the community with supportive services but a guardian places the individual in a nursing home, or keeps the individual in a nursing home, so the guardian can

11

2.      *Plaintiffs' Remaining Claims Should Be Dismissed*

a.      *Geller Lacks Standing to Bring His Non-*Qui Tam *Claims*

With the exception of the FCA and MMFCA claims (discussed above), the Defendants argue that this Court lacks subject matter jurisdiction over Geller's claims because he has no standing to bring them.  (Doc. #54 at 13-17; Doc. #55 at 12-13; Doc. #56 at 25-31).  For the reasons set forth below, the Court agrees.

The Sixth Circuit has recognized that, "[t]he threshold question in every federal case is whether the court has the judicial power to entertain the suit."  *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997).  Article III of the United States Constitution provides that federal courts may exercise jurisdiction only where an actual "case or controversy" exists.  U.S. Const. art. III, § 2.  "One element of the case-or-controversy requirement is that [a plaintiff], based on [his] complaint, must establish that [he] ha[s] standing to sue."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  To this end, it is well-established that:

> … the irreducible constitutional minimum of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.

---

collect the $95.00 in Medicaid-paid guardianship fees, the guardian has both committed Medicaid fraud and violated the [ADA]." (emphasis added)).  Such vague and conditional allegations are wholly insufficient to plead an FCA or MMFCA claim with the required particularity.  *See, e.g., Bledsoe*, 501 F.3d at 504, n. 12 ("allegation of an actual false claim is a necessary element of a FCA violation").

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotations and citations omitted). In other words, of particular relevance here, Article III "requires the party who invokes the court's authority to show that *he personally has suffered some actual or threatened injury* as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation omitted) (emphasis added). Not any kind of subjectively-alleged "harm" will suffice; rather, "the plaintiff must have suffered an 'injury in fact' – an invasion **of a legally protected interest** which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted) (emphasis added).

In this case, a review of the second amended complaint makes clear that Geller lacks standing to bring any of his non-*qui tam* claims because he simply does not allege that he personally suffered a cognizable injury under the above standards. Indeed, the only "injury" alleged by Geller in the second amended complaint is his assertion that he is "specially aggrieved by the failure of legislative reforms he helped draft to be honored by probate courts." (Doc. #35 at 9). But, this purported injury fails in at least two respects. First, Geller's alleged "injury" grows not out of a "legally protected interest," but rather from his own disappointment that his work did not bring about the changes he wished to see with respect to Michigan's guardianship procedures. Second, Geller has not alleged an actual or threatened injury suffered by him *as a result of the Defendants' alleged actions.* Indeed, the "legislative reforms" that Geller "helped draft" were not intended to protect

*him*, so the probate courts' alleged failure to "honor" these reforms cannot be said to have injured *him* personally.

In an apparent effort to overcome the Defendants' arguments on this issue, Geller asserts a litany of other alleged injuries in his response brief, including: losing "[i]ncalculable opportunity costs"; being the target of *ad hominem* attacks "by a designee of the Michigan Probate Judges Association"; being discharged from his position at the Washtenaw County Probate Court "at the apparent direction of a Chief Justice Maura Corrigan"; having a complaint filed against him (by a non-party) with the Attorney Grievance Commission; being threatened with sanctions in connection with this lawsuit; being shunned by the legal community; and feeling a "grievous despair" due to others being robbed of their independence due to unnecessary institutionalization and inappropriate guardianships.  (Doc. #60 at 109-10).  But, even if the Court were to consider these allegations – made for the first time in Plaintiffs' response brief[5] – these alleged injuries simply are not attributable to the conduct of any of the specifically-named defendants. Moreover, most all of these purported "injuries" are not alleged to have flowed from the "putatively illegal conduct" described in Plaintiffs' second amended complaint, but, rather, from the manner in which Geller has chosen to pursue redress for that conduct.

In sum, Geller has not alleged that "*he personally has suffered some actual or*

---

[5] Courts have recognized that a plaintiff cannot use his response to a motion to dismiss as a vehicle to cure the defects in the operative complaint.  *See, e.g., Newman v. Encore Cap. Grp.*, No. 16-11395, 2017 WL 3479510, at *17 (E.D. Mich. Aug. 14, 2017) ("Plaintiffs cannot cure deficiencies in their Amended Complaint through new allegations in their response to Defendants' motion to dismiss.").

*threatened injury* as a result of the putatively illegal conduct of the defendant."  *Valley Forge Christian Coll.*, 454 U.S. at 472 (internal quotation omitted) (emphasis added).  As such, Geller lacks Article III standing to assert the non-*qui tam* claims he seeks to bring in this action.

Geller also argues that, under these circumstances, he should be allowed to assert the rights of certain third parties, i.e., "individuals who are under guardianship but do not meet the statutory thresholds to be deemed a legally incapacitated person, or who have a guardian and are unnecessarily in nursing."  (Doc. #60 at 101).  It is true that "[a] plaintiff may raise a constitutional claim on behalf of a third party if he can prove (1) injury-in-fact to the plaintiff, (2) a close relationship between the plaintiff and the third party whose rights he asserts, and (3) a hindrance preventing the third party from raising his own claim."  *Moody v. Michigan Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004)).  Presumably, a "close relationship between the litigant and third party ensures that the plaintiff will effectively advocate for the third party's rights."  *Moody*, 847 F.3d at 402.

There are two primary problems with Geller's argument, however.  First, for the reasons set forth above, Geller has not shown that *he* personally suffered an injury in fact.  Second, even if Geller had made such a showing, and also was able to demonstrate a "close relationship" with the third parties whose rights he seeks to assert,[6] the fact still remains

---

[6] With respect to this prong of the *Moody* test, Geller argues that one of the focuses of his career "has been on guardianship"; thus, he claims he "has a sufficient 'closeness' to those for whom he endeavors to advocate."  (Doc. #60 at 108).  Geller cites no case law in support of the proposition that his commitment to, and experience with, guardianship reform satisfies the "close relationship"

that he has not sufficiently alleged a hindrance preventing these third parties from raising their own claims.  The Sixth Circuit has recognized that, "Determining the existence of a hindrance requires examining 'the likelihood and ability of the third parties … to assert their own rights.'"  *Moody*, 847 F.3d at 402 (quoting *Powers v. Ohio*, 499 U.S. 400, 414 (1991)).  Here, Geller has failed to offer any concrete reason beyond mere anecdotal assertions[7] why the third parties at issue – who allegedly are improperly subject to guardianships – cannot assert their own rights in challenging the propriety of such guardianships.[8]  Indeed, any individual dissatisfied with a probate court's adjudication of his or her rights and interests in a guardianship proceeding may appeal the court's decision to the Michigan Court of Appeals as a matter of right.  *See* M.C.R. 5.801(A)(3) ("Appeal of Right.  A party or an interested person aggrieved by a final order of the probate court may appeal as a matter of right as provided in this rule.  Orders appealable of right to the Court of Appeals are defined as and limited to the following: …. (3) a final order affecting the rights and interests of an adult or a minor in a guardianship proceeding …."); *see also Kowalski*, 543 U.S. at 132 (finding no hindrance where state court appellate review was

---

prong.  More importantly, however, even if Geller could satisfy this prong of the *Moody* test, he cannot meet either of the other two elements necessary to establish third-party standing.

[7] For example, Geller asserts that these third parties face "an almost insurmountable hurdle to reclaiming their rights," arguing that few guardianship respondents are represented by counsel; and that once under guardianship, an individual can suffer isolation, can be denied access to the mail or telephone, and "has a reasonable fear of retaliation from the guardian should she or he attempt to appeal[.]"  (Doc. #60 at 103-05).  Such assertions are devoid of detail, however, and simply do not establish – in a concrete manner – the specific hindrances allegedly preventing such individuals from pursuing their own claims.

[8] In fact, Boucher – an individual under guardianship – is a party to this case.  Plaintiffs do not explain why there is *not* a hindrance to Boucher's ability to assert his own rights, yet there allegedly *is* a hindrance to the ability of "similarly situated" individuals to assert their own rights.

available).  The Michigan Court Rules also provide for periodic review of guardianships by a court-appointed investigator, and, if an individual requests or petitions for modification of guardianship, court appointment of attorneys for representation.  *See* M.C.R. 5.408.  Accordingly, Geller has failed to show any hindrance[9] preventing these individuals from raising their own claims, and he therefore lacks standing to assert his remaining, non-*qui tam* claims.[10]

> b.      *To the Extent Boucher Has Standing to Bring His Own Claims, They are Barred by the* Rooker-Feldman *Doctrine*

Boucher's only direct claims are asserted against the St. Clair County Defendants, and, with respect to those claims, the analysis is somewhat different than discussed above. Documentation provided from the St. Clair County Probate Court file[11] establishes that, on June 11, 2014, Michigan Adult Protective Services filed a petition for appointment of

---

[9] To the extent Boucher attempts to assert third-party standing, he has also failed to demonstrate a "hindrance," and has not even attempted to show a "close relationship" with other "individuals who have a guardian and are unnecessarily institutionalized."  (Doc. #60 at 101).

[10] Because the Court is recommending dismissal of Geller's claims for lack of standing, it need not consider the merits of the Defendants' other arguments, such as the fact that service was improper as to the St. Clair Defendants, that Geller fails to state a claim against the State Defendants, or that the Eleventh Amendment bars his claims against the State Defendants.

[11] Generally, at the motion to dismiss stage, the court may consider only the allegations in plaintiff's complaint and documents attached thereto.  *See Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425 (6th Cir. 2018).  However, courts have recognized that "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the … motion to dismiss …."  *Id.* (quoting *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014)).  *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (holding that at the motion to dismiss stage, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").  All of the documents referred to herein fall within these standards, and Boucher does not contest their authenticity.

guardian of incapacitated individual on Boucher's behalf.  (Doc. #53-6).  That same day, St. Clair County Probate Judge John Tomlinson appointed an attorney as a Guardian Ad Litem for Boucher, with the directive to submit a written report with recommendations to the court on the petition.  (Doc. #53-7).  After meeting with Boucher at a local hospital, the Guardian Ad Litem prepared his report, indicating that Boucher was "fine with the Public Guardian's office assisting him until he 'gets back on his feet.'"  (Doc. #53-8 at 2).  On July 9, 2014, Judge Tomlinson conducted a hearing on the petition and concluded that Boucher, by clear and convincing evidence, was incapacitated by reason of chronic intoxication, mental deficiency and physical illness or disability, and granted the petition, appointing the St. Clair County Public Guardian as Boucher's guardian.  (Doc. #53-9).  In 2015, after a review of the guardianship and receiving the report of a new Guardian Ad Litem, the Court continued the guardianship.  (Doc. #53-10).

On May 16, 2016, Boucher filed a petition to terminate the guardianship.  (Doc. #53-11).  Again, a Guardian Ad Litem was appointed to review the petition, and he reported that Boucher "believes he can take care of his own needs" and "would like his independence back."  (Doc. #53-12 at 2).  After conducting a hearing on July 6, 2016, Judge Tomlinson denied Boucher's petition to terminate the guardianship, finding that he "continues to be an incapacitated individual and in need of a guardian as a means of providing continuing care and supervision …."  (Doc. #53-13 at 2).  Boucher did not appeal this decision.

Judge Tomlinson reviewed the guardianship again three months later (in September 2016), and ordered that the guardianship be continued.  (Doc. #53-14).  However, Judge

Tomlinson also directed the St. Clair County Public Guardian to investigate whether Boucher was eligible for public housing.  (*Id.*).  On August 13, 2018, Judge Tomlinson reviewed the guardianship again and, after hearing the evidence and receiving a new Guardian Ad Litem report, determined that the guardianship should continue without modification.  (Doc. #53-15).  Again, Boucher did not appeal this decision.

In the second amended complaint, Boucher alleges that he has been placed in "Medilodge of St. Clair … by his full guardian, St. Clair County Public Guardian[,]" despite the fact that he "does not meet the definition of 'incapacitated person'" and "can live in the community with a single supportive service, house cleaning."  (Doc. #35 at 9).  Boucher further asserts, *inter alia*, that the St. Clair County Public Guardian:

- Petitioned for guardianship when it knew or should have known that he was not an incapacitated person;

- Petitioned for guardianship when it knew or should have known guardianship was unnecessary, as Boucher "was of sound mind, capable of [] appointing a patient advocate through a durable attorney for health care";

- Made wholly insufficient efforts to assist Boucher in finding an apartment, though being "well aware of his desire to move and his ability to live on his own"; and

- Refused to petition for termination of the guardianship, despite knowing that guardianship was not appropriate.

(*Id.* at 23-24).  As a result, Boucher asks this Court to "**enjoin <u>St. Clair County and St. Clair County Guardian</u> to**":

- Cooperate with other agencies to immediately find an apartment for him.

- Arrange with the Department of Health and Human Services for

> housekeeping services through the Home and Community Based
> Waiver Program or the Home Help Program.

- Resign as guardian for Boucher and recommend to the court that
  guardianship should be terminated.

(*Id.* at 34 (emphasis in original)).  Boucher also asks that this Court render judgment in his

favor against St. Clair County and the St. Clair County Public Guardian "in the sum of

$100,000 in compensatory and punitive damages for false imprisonment and conversion of

personal property[.]"  (*Id.*).  Boucher's claims fail in multiple respects.

First, to the extent Boucher asks this Court to "terminate[]" his guardianship and

assist with placing him in an apartment in the community, this Court lacks subject matter

jurisdiction to do so.  The United States Supreme Court is the only federal court vested

with the authority to consider appeals from state-court judgments, and then, only from each

state's highest court.  *See Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).  The

*Rooker-Feldman* doctrine bars lower federal courts from reviewing state court judgments.[12]

*See Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (under *Rooker-Feldman* doctrine,

"a party losing in state court is barred from seeking what in substance would be appellate

review of the state judgment in a United States district court, based on the losing party's

claim that the state judgment itself violates the loser's federal rights").  Here, *Rooker-

Feldman* bars Boucher's claims because the Court simply could not grant him the relief he

seeks without undoing numerous decisions of the probate judge, including, most

fundamentally, that it is appropriate for Boucher's guardianship to be continued.  (*E.g.*,

---

[12] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Doc. #53-15) (finding that "No modification of the guardianship appears necessary from the information before the court."). If Boucher wished to challenge a decision of the probate court, he was required to have done so by filing an appeal with the Michigan Court of Appeals. *See* M.C.R. 5.801(A)(3).

Boucher attempts to skirt the *Rooker-Feldman* doctrine by claiming that he does "not seek to overturn any state court judgment." (Doc. #60 at 9). This argument, too, is without merit. Even if Boucher could somehow obtain the relief he wants without disturbing a "judgment" of the probate court, that fact does not alter the analysis because even where a party presents a claim that does not *directly* challenge the state court's decision, a federal court nonetheless lacks jurisdiction over the claim if it is "inextricably intertwined with the judgment of the state court." *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001). A claim is inextricably intertwined with the judgment of the state court if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Id.* (internal quotations omitted).

Finally, analogous case law makes clear that dismissal of Boucher's claims is appropriate. In *Fried v. Reeves*, No. 09-1017, 2009 WL 5216063, at *2 (W.D. Mich. Dec. 29, 2009), a case squarely on point, the court considered a *pro se* plaintiff's challenge to a mental health commitment that was entered by the state court, as well as a subsequent guardianship order. In declining the plaintiff's request for an order recognizing that the guardianship was "entered illegitimately," the Court reasoned as follows:

> Moreover, to the extent Plaintiff asks this Court to "reverse" the decisions of the Michigan state courts with regard to his civil commitment and guardianship, the Court lacks subject matter

jurisdiction.

\*       \*       \*

A federal district court has no authority to review final judgments of state court judicial proceedings. Even constitutional claims which are inextricably intertwined with the state court decisions are not reviewable.

\*       \*       \*

Plaintiff's claims are "inextricably intertwined" with decisions of the state courts because they amount to nothing more nor less than a "prohibited appeal" from the decisions of the Michigan state courts. Indeed, the Sixth Circuit previously has found that the *Rooker-Feldman* doctrine bars an action challenging the termination of parental rights in state court proceedings because such an action would be an attempted appeal from a state court decision. The recourse available to plaintiff in response to adverse state-court decisions was to pursue timely appeals in the Michigan Court of Appeals, thereafter seek leave to appeal to the Michigan Supreme Court, and if necessary apply for a writ of *certiorari* to the United States Supreme Court.

Because the *Rooker-Feldman* doctrine clearly precludes a lower federal court from reviewing state-law decisions, Plaintiff's case is dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine.

*Id.* at \*2-3 (internal citations omitted). Other courts have reached the same conclusion on similar facts. *See, e.g., Carr v. Spencer*, 13 F. App'x 296, 297-98 (6th Cir. 2001) (dismissing complaint for lack of subject matter jurisdiction where the complaint sought federal court review of a state court judgment regarding the guardianship of a minor child); *Scully v. Goldenson*, No. 17-2486, 2018 WL 4697298, at \*2 (7th Cir. Oct. 1, 2018) (dismissing plaintiff's due process and equal protection claims, pursuant to the *Rooker-Feldman* doctrine, to the extent those claims asked the federal court to overturn the state court's rulings during the guardianship matter); *Johnson v. Cook County Probate Court*,

No. 11 C 01897, 2011 WL 1548385, at *2 (N.D. Ill. Apr. 22, 2011) (dismissing plaintiff's claims pursuant to the *Rooker-Feldman* doctrine and reasoning that, despite the plaintiff's request that the court review and set aside the probate court's "appointment of a guardian and adjudication of plaintiff as a disabled person," it had "no jurisdiction to terminate the guardianship ordered by the probate court"). *See also Renteria*, 2016 WL 7159233, at *5 ("federal courts do not have subject matter jurisdiction over guardianship proceedings").

In light of this case law, the *Rooker-Feldman* doctrine precludes this Court's exercise of subject matter jurisdiction over Boucher's claims.   In the second amended complaint, Boucher asks this Court to order his guardian to resign and recommend termination of the guardianship to the probate court because, in his view, he does not fit the definition of an "incapacitated person."  (Doc. #35 at 9, 23-25, 34).  This is clearly an inappropriate invitation for this Court to review and reverse the probate court's judgment.[13] As discussed above, federal courts are courts of limited jurisdiction, and they have no "subject matter jurisdiction over guardianship proceedings."  *Renteria*, 2016 WL 7159233, at *5.

Boucher also argues that his case falls within the "exception" to the *Rooker-Feldman* doctrine that exists where a plaintiff "asserts *independent claims* that those state

---

[13] The same is true with respect to the relief Geller seeks on behalf of other individuals.  Geller asks this Court to order the termination of guardianship for each individual who "does not meet the criteria for appointment of a guardian" (Doc. #35 at 36), but that request for relief necessarily requires the Court to determine that the relevant probate court either wrongfully appointed a guardian or wrongfully refused to terminate a guardianship.  Again, such alleged errors may only be appealed to the Michigan Court of Appeals.  *Fried*, 2009 WL 5216063, at *2-3; M.C.R. 5.801(A)(3).

court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means." (Doc. #60 at 100 (quoting *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006)) (emphasis in original)). Boucher's argument is without merit, however, as all of the challenged actions of the St. Clair County Defendants are based upon orders by the St. Clair County Probate Court and what flows from those decisions, not on any alleged independent fraud leading to that court's finding of incapacity.[14] As the Sixth Circuit recognized in *McCormick*, the *Rooker-Feldman* doctrine applies where the "claims assert an injury caused by the state court judgments." *Id.* at 392. That doctrine also applies to bar a claim against a third party if the actions of the third party were a product of the state court judgment. *Id.* at 394 ("if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself").

Here, where Boucher alleges that he has suffered, and will continue to suffer harm – including violations of his due process and/or equal protection rights – as a result of the rulings of the St. Clair County Probate Court (allegedly improperly imposing a guardianship), and all of the actions of the St. Clair County Public Guardian are products of the judgments and rulings of that court, the *Rooker-Feldman* doctrine precludes this

---

[14] For example, Boucher alleges, *inter alia*, that the St. Clair County Public Guardian "picked [him] up [] from his home and placed him in a nursing home, without revealing their authority or explaining their course of action[,]" and "made wholly insufficient efforts to assist [him in finding] an apartment, though well aware of his desire to move and his ability to live on his own[.]" (Doc. #35 at 24, 25). But, where Boucher concedes that the St. Clair County Public Guardian is his "full guardian" (*Id.* at 9), it is clear that the actions of which he complains flow from orders issued by the St. Clair County Probate Court.

Court from reviewing the state court's decision(s).  If Boucher was dissatisfied with the St. Clair County Probate Court's adjudication of his rights and interests in a guardianship proceeding, his remedy was to appeal that court's decision to the Michigan Court of Appeals.  *See Fried*, 2009 WL 5216063, at \*2-3; M.C.R. 5.801(A)(3).  Thus, this Court lacks subject matter jurisdiction over Boucher's claims against the St. Clair County Defendants, and they should be dismissed.

c.      *Any Remaining Claims Should Be Dismissed*

Finally, to the extent Plaintiffs purport to bring claims against other defendants – such as "All Michigan Probate Courts," "All Other Michigan Counties," Judge Monte Burmeister, Karry A. Hepting, and Stephen Currie – such claims should be dismissed.

"[A] district court may, at any time, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).  Moreover, it is a basic pleading essential that a plaintiff must attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 555 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person or entity is named as a defendant without an allegation of any specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were

25

personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Here, despite listing dozens of Michigan counties and probate courts as defendants in the case caption, Plaintiffs fail to set forth any allegations whatsoever against these entities in the body of their complaint. Similarly, despite naming Judge Burmeister, Ms. Hepting, and Mr. Currie as defendants, Plaintiffs identify no wrongdoing on their part. Such significant shortcomings are particularly striking, given that Geller is a licensed attorney who should be well aware of Rule 8's minimal pleading standards. *See* Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The Court therefore should dismiss the remainder of Plaintiffs' complaint – including the purported claims against "All Michigan Probate Courts," "All Other Michigan Counties," Judge Monte Burmeister, Karry Hepting, and Stephen Currie – because, in failing to specify any wrongful conduct by any of these defendants, or any particular federal right that they allegedly violated, Plaintiffs have shown no basis for this Court to exercise subject matter jurisdiction over these claims.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that all four of the pending motions to dismiss (**Docs. #53, #54, #55, #56**) be **GRANTED** and that any

remaining claims be dismissed *sua sponte* for lack of subject matter jurisdiction.

Dated: April 26, 2019                              s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                                            United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation

and Order, any party may serve and file specific written objections to the proposed findings

and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R.

Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a

waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United

States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this

Report and Recommendation will be preserved for the Court's appellate review; raising

some objections but not others will not preserve all objections a party may have.  *See Smith

v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also

Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections

must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served

with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should

be concise, and should address specifically, and in the same order raised, each issue

presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 26, 2019.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
