UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY GELLER and
RONALD E. BOUCHER,

    Plaintiffs,
v.

STATE OF MICHIGAN, MICHIGAN
PROBATE COURTS, PUBLIC
ADMINSTRATORS, ST. CLAIR COUNTY,
WASHTENAW COUNTY, and ALL
COUNTIES,

    Defendants,
and

UNITED STATES OF AMERICA,

    Interested party.
                /

Case Number 17-13233
Honorable David M. Lawson
Magistrate Judge David R. Grand

## **ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION FOR SANCTIONS**

Plaintiff Bradley Geller, a licensed attorney acting *pro se* in this case, filed this action under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, alleging various systemic faults with Michigan's laws and practices of appointing and monitoring guardians for mentally and physically disabled individuals. The United States declined to intervene, and Geller proceeded on his own. The case eventually was dismissed, but not before a class of defendants — eight public administrator defendants — filed a motion under Federal Rule of Civil Procedure 11(c) for sanctions. Magistrate Judge David Grand filed a report on August 7, 2019 recommending that the motion be denied. The public administrator defendants filed timely objections to the report and recommendation, and Geller filed a response. The case now is before the Court for fresh review of the contested parts of Judge Grand's report.

I.

Judge Grand summarized the proceedings in this case, and the parties are familiar with the facts. The focus of the motion is the second amended complaint, which Geller filed with permission. That pleading asserted claims against four groups of defendants: the St. Clair County defendants, the State of Michigan defendants (including Michigan Attorney General Dana Nessel and Michigan Supreme Court Justice Bridgette McCormack), the Washtenaw County defendants, and eight public administrators. In addition to the fraud claims alleged under the False Claims Act, Geller alleged claims under 42 U.S.C. § 1983, the Americans with Disabilities Act, the Racketeer Influenced and Corrupt Organizations Act, and the Michigan Medicaid False Claims Act. Each group of defendants separately moved to dismiss the case. On April 26, 2019, Judge Grand issued a report recommending that all the plaintiffs' claims should be dismissed. The Court adopted the R&R on May 16, 2019 and denied the plaintiffs' subsequent motion to alter judgment on July 17, 2019.

While the defendants' motions to dismiss were pending, the public administrators moved for Rule 11 sanctions against the plaintiffs. They argued that the plaintiffs violated Rule 11(b)(2) because their claims in the second amended complaint were not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law. They asserted that the plaintiffs lacked standing and that the *Rooker-Feldman* doctrine barred the plaintiffs' claims. They also contended that the plaintiffs violated Rule 11(b)(1) because their allegations of fraud so lacked in particularity as to demonstrate that the plaintiffs pursued the claims to harass the public administrators.

Judge Grand recommended denying the motion. As to the alleged Rule 11(b)(2) violation, he pointed out that although the *Rooker-Feldman* doctrine barred the plaintiffs' claims against

plaintiff Boucher's public guardian and those involved in the administration of the guardianship, the plaintiff never asserted those claims against the public administrators. Therefore, he suggested that there was no basis for the public administrators to seek sanctions under Rule 11(b)(2). Moreover, although the Court ruled that Geller lacked third-party standing to bring claims on behalf of certain wards, his argument about individuals under guardianship having certain inherent challenges to independently pursuing their rights was "far from frivolous."

Magistrate Judge Grand also found no sanctionable violation of Rule 11(b)(1). Although the claims against the public administrators "were devoid of legal merit," there was "simply no indication that they were brought for an improper purpose"; instead, the magistrate judge found that "Geller was motivated by a sincere desire to expose and correct subjectively-perceived deficiencies in Michigan's guardianship system."

II.

The public administrator defendants filed three objections to the report and recommendation. When objections are filed, the Court must "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made," 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), and determine whether the recommendation should be accepted, rejected, or modified in whole or in part, 28 U.S.C. § 636(b)(1). "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections

but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

## A. First Objection

In their first objections, the public administrator defendants rehash their *Rooker-Feldman* argument, contending that the magistrate judge erred by not recommending sanctions against Geller under Rule 11(b)(2). They say that the magistrate judge went astray when he declined to recommend sanctions against Geller based on the doctrine because he found that Geller's claims against the public administrators failed on other grounds. Geller's response, of course, endorses the magistrate judge's decision, but he also requests that this Court: (1) re-instate the case; (2) allow the plaintiffs to conduct discovery of all the parties; (3) entertain his motion for summary judgment; and (4) grant the remedies requested in the second amended complaint. Geller's request for affirmative relief will not be entertained because it has not been presented by proper motion, it repeats a reconsideration request that already has been denied, and jurisdiction over the dismissal of the main case is in the court of appeals, since Geller has filed a notice of appeal. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

Under Federal Rule of Civil Procedure 11(b), a party's or attorney's signature on a pleading or other court paper amounts to a certification that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P.

11(b)(2). If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

The public administrator defendants insist that the plaintiffs' claims against them were "obviously barred by the *Rooker-Feldman* doctrine," and because a reasonable inquiry into the law would have revealed that the plaintiffs lacked standing because they had not suffered an injury traceable to the public administrators that the court could redress, those claims were meritless. That point is not much in dispute now. It is plain that if Geller's main focus was on the damage caused by a state court order, then he would have no recourse with lower federal courts, since the United States Supreme Court is the only federal court vested with the authority to consider appeals from state-court judgments. *See Abbott v. Michigan*, 474 F.3d 324, 326 (6th Cir. 2007) (citing *Lance v. Dennis*, 546 U.S. 459, 463-464 (2006)); *see also* 28 U.S.C. § 1257.

However, at oral argument on the public administrator defendants' motion to dismiss before the magistrate judge, Geller provided more detail about the types of claims he tried to plead in the second amended complaint and why he believed those particular claims did not implicate the *Rooker-Feldman* doctrine. He elaborated further in his notice of voluntary dismissal and response to the motion for sanctions. Geller conceded that federal courts do not have authority to review final judgments of a state court in judicial proceedings, but he contended that he was not seeking to overturn a particular state court decision. Instead, he argued that the public administrators also violated the Constitution and federal statutes by: (1) violating the rights of individuals under the ADA by unnecessarily institutionalizing them; (2) violating individuals' First Amendment rights to freedom of religion and freedom of assembly (by restricting visitors of their choice); (3) depriving individuals of their property without due process; and (4) violating

statutory and fiduciary duties with "grievous consequences" to individuals' quality of care and life. These federal claims would not implicate the *Rooker-Feldman* doctrine.

The magistrate judge was unpersuaded on the merits of that rejoinder to the motion to dismiss. But he considered Geller's explanation when concluding that sanctions under Rule 11(b)(2) were not warranted. The public administrator defendants fault the magistrate judge for looking beyond the second amended complaint when making that evaluation. However, that ignores the reality that the primary purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender. *Wright & Miller*, 5A Fed. Prac. & Proc. Civ. § 1336.3 (4th ed.). Courts must calibrate sanctions to the least severe level necessary to serve the deterrent purposes of the rule. *Rentz v. Dynasty Apparel Industries, Inc.*, 556 F.3d 389, 395 (6th Cir. 2009). When evaluating deterrence, the Court may consider a party's rationale for concluding that his or her pleading is "warranted by existing law" or "nonfrivolous argument[s] for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2). A filing is warranted by existing law if it concerns an issue for which there is *any* support, or for which the law is unsettled or vague. *See Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) (vacating sanctions where there was "scant on-point authority to guide the reasonable lawyer" to conclude that existing law did not warrant the RICO claims).

The magistrate judge concluded that Geller's argument was unconvincing but not sanctionable. After giving the issue a fresh look, the Court agrees. Because the plaintiffs' novel theory of liability was not altogether frivolous, the public administrator defendants' first objection will be overruled.

B. Second Objection

Next, the public administrators object to Magistrate Judge Grand's decision not to recommend sanctions under Rule 11(b)(2) because, they say, Geller's argument that he had standing to assert his claims was frivolous.

The law in this area is well settled. A plaintiff seeking relief from a federal court must establish at the outset that he or she is asserting a case or controversy under Article III of the Constitution. *Walsh v. Seldin*, 422 U.S. 490, 498 (1975). The first requirement — demonstrating that he or she suffered an injury in fact — requires that a plaintiff "show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo v. Robins*, 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560). To be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Ibid.* Although "particularization is necessary to establish an injury in fact," "it is not sufficient [by itself;]. . . an injury in fact must also be 'concrete.'" *Ibid.* A concrete injury "must be '*de facto*,' meaning that it "must actually exist" and be "'real, not 'abstract.'" *Ibid.* (citing Black's Law Dictionary 479 (9th ed. 2009)).

Although the claimed injury usually must be "personal," courts sometimes will allow a plaintiff to assert the rights of a third party under certain limited circumstances. A "plaintiff may raise a constitutional claim on behalf of a third party if he can prove (1) injury-in-fact to the plaintiff, (2) a close relationship between the plaintiff and the third party whose rights he asserts, and (3) a hindrance preventing the third party from raising his own claim." *Moody v. Michigan Gaming Control Bd.*, 847 F.3d 399, 402 (6th Cir. 2017). Presumably, a "close relationship between the litigant and third party ensures that the plaintiff will effectively advocate for the third party's rights." *Ibid.*

In this case, Geller lacked standing to bring his non-*qui tam* claims because he did not allege a cognizable injury. In the second complaint, Geller only alleged that he was "specially aggrieved by the failure of the legislative reforms he helped draft to be honored by probate courts." Second Am. Compl., ECF No. 35, PageID.298. This articulation of an injury fails for two reasons. First, the injury did not grow out of a "legally protected interest," but rather from his disappointment that his work did not change Michigan's guardianship procedures as he had wished. Second, Geller did not allege actual or threatened injury resulting from the public administrators' conduct. The legislative reforms that Geller helped draft were not intended to protect him, so the probate courts' alleged failure to honor the reforms have not injured Geller personally.

The public administrator defendants argue that the Court should sanction Geller because the Magistrate Judge already rejected Geller's standing arguments in the first report and recommendation to grant the State's first motion to dismiss. Although the Magistrate Judge vacated that report and recommendation, these defendants assert that Geller nevertheless knew that his standing arguments would not hold up, yet he still made them.

However, Geller did not simply regurgitate his unsuccessful arguments. Instead, he tried to beef up his alleged injuries in his response to the public administrator defendants' motion to dismiss. He contended that he suffered from "incalculable opportunity costs," that he was the target of probate judges' *ad hominem* attacks, and that he was terminated from and threatened with termination from various positions. Plfs.' Resp. to Mot. to Dismiss, ECF No. 60, PageID.756. Geller also argued that the legal community shunned and threatened him with sanctions because of this action. Finally, he maintained that he felt grievous despair due to others being robbed of their independence due to unnecessary institutionalization and inappropriate guardianship. *Id.* at

PageID.756-57. Those additional allegations did not fix his lack of standing because he failed to demonstrate that the public administrators, or any of the other defendants for that matter, were responsible for any of those injuries. However, reasserting the standing argument and providing additional details explaining why Geller believed that he satisfied the requirement is not so frivolous as to warrant sanctions.

Moreover, Geller maintained that he had standing to assert the rights of "individuals who [were] under guardianship but d[id] not meet the statutory thresholds to be deemed a legally incapacitated person, or who h[ad] a guardian and [were] unnecessarily in nursing." Plfs.' Response to Mot. to Dismiss, ECF No. 60, PageID.748. Judge Grand correctly concluded that Geller lacked third-party standing to bring claims on behalf of individuals subject to guardianships because he did not show a sufficiently "close relationship" with the third parties whose rights he sought to assert, and he had not sufficiently alleged a hindrance preventing the third parties from raising their own claims. ECF No 66, PageID.877. But the magistrate judge declined to recommend sanctions because he found that "Geller's argument about individuals under guardianship having certain inherent challenges to independently pursuing their rights . . . [was] far from frivolous," mainly because one reasonably "could find that . . . he presented a 'non frivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" R&R on Mot. to Dismiss, ECF No. 77, PageID.1016 (quoting Fed. R. Civ. P. 11(b)(2)).

The public administrators disagree, observing that plaintiff Boucher — an individual under guardianship — actually is a party to the action and therefore *can* assert his own rights. And Geller never explained why other similarly-situated individuals could not do so as well. But the addition of Boucher did not render Geller's claims frivolous. Geller presumably added Boucher to the action to ensure that at least one party had standing, while he argued that he should have standing

to assert the rights of other third parties, who may be in a more precarious situation than Boucher and who face more significant hindrances to asserting their rights. Sanctions are not appropriate to deter Geller's effort to ameliorate a deficiency in standing while still pursuing this other argument, which is at least somewhat plausible.

The public administrators also rely on *Kowalski v. Tesmer*, 543 U.S. 125 (2004), a case in which the Supreme Court held that attorneys regularly representing indigent criminal defendants did not have standing to challenge a state law and practice that denied appointment of appellate counsel to defendants seeking to appeal guilty-plea-based convictions on direct appeal. The plaintiff-lawyers sought an injunction to bar the practice as it applied to potential future clients. Although previous cases recognized third-party standing based on attorney-client relationships, the Court held that an existing attorney-client relationship was "quite distinct" from a hypothetical one. *Id.* at 130-131. The Court concluded that the attorneys failed to establish any relationship with the indigent defendants and any hindrance to indigent defendants' ability to assert their own constitutional rights. *Id.* at 132-33. The Court rejected the attorneys' argument that indigent defendants lack the sophistication needed to satisfy procedural requirements and coherently advance constitutional claims. *Ibid.* The public administrator defendants argue that the precedent should have alerted Geller that his third-party standing claim was so patently frivolous that the Court should punish him for asserting it.

But Geller's argument was not as one-sided as the public administrators make it out to be. In his response to the defendants' motion to dismiss, Geller attempted to distinguish *Kowalski*. He cited *Moody*, which held that determining the existence of a hindrance requires examining "the likelihood and ability of the third parties . . . to assert their own rights." *Moody*, 847 F.3d at 402. Geller argued that individuals under guardianship face even larger, if not "insurmountable,"

obstacles to appealing their cases compared to indigent criminal defendants that plead guilty. Plfs.' Resp. to Mot. to Dismiss, ECF No.60-1, PageID.750. For one, he cited statistics that 2,379 criminal defendants appealed their cases to the Michigan Court of Appeals in 2017, 880 of which were appeals from guilty pleas. *Id.* at PageID.750. In contrast, Geller could not find a single appeal of a guardianship order, *pro se* or otherwise. *Ibid.* Also, although criminal defendants are aware they are charged with a crime and appear before court, "an individual can be dragged from [his or her] home[,] have a guardianship imposed without notice, and be thrust in a nursing home." *Id.* at PageID.751. Moreover, "[t]he individual may be unaware she or he even has a guardian." *Ibid.* Geller highlighted various other differences between individuals under guardianship and criminal defendants, such as the defendants' rights to counsel, more *pro bono* resources for defendants, and better access to writing materials and mail services. *Ibid.*

To be sure, Geller's argument is not sufficient to show an essential element of standing. As Judge Grand pointed out, "any individual dissatisfied with a probate court's adjudication of his or her rights and interests in a guardianship proceeding may appeal the court's decision to the Michigan Court of Appeals as a matter of right." R&R to Dismiss, ECF No. 66, PageID.878; *see* Mich. Ct. Rule 5.801(A)(3). The Michigan Court Rules also provide for periodic review of guardianships by a court-appointed investigator, and, if an individual requests or petitions for modification of guardianship, court appointment of attorneys for representation. Mich. Ct. Rule 5.408. Therefore, Geller could not show any hindrance preventing individuals under guardianship from raising their own claims and, therefore, he lacked third-party standing. But that eventual ruling was not so readily apparent as to warrant sanctions.

Because Geller made a good-faith and non-frivolous argument "for extending, modifying, or reversing existing law or for establishing new law," Fed. R. Civ. P. 11(b)(2), the public administrator defendants' second objection will be overruled.

## C. Third Objection

Finally, the public administrator defendants object to the magistrate judge's decision not to recommend sanctions under Rule 11(b)(1) or 11(b)(3), because, they say, the plaintiffs' fraud accusations lacked evidentiary support and showed that they filed this action for the improper purpose of harassing the public administrators. The objectors disagree with the Magistrate Judge's conclusion that there was no "indication that [the fraud claims against the public administrators] were brought for an improper purpose" and point out that the Magistrate Judge did not address the Rule 11(b)(3) argument. Under Rule 11(b)(3), a party filing a paper in court certifies that the factual allegations have evidentiary support, "or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

In their second amended complaint, the plaintiffs direct their *qui tam* claims under the False Claims Act ("FCA") and Michigan Medicaid False Claims Act ("MMFCA") solely against the nine public administrators. Their theory of liability is based on the allegation that the public administrators received federal and state funds as guardianship fees under Medicaid, but their requests for payment were fraudulent because they did not perform their statutory and constitutional duties.

It is undisputed that fraud claims under the FCA and MMFCA are subject to heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *United States ex. rel. Bledsoe v. Cmty. Health Sys. Inc.*, 501 F.3d 493, 503 (6th Cir. 2007). In their second amended complaint, the

plaintiffs assert that the Michigan Department of Health and Humans Services "use[d] Medicaid funds to pay guardians for guardianship fees," Second Am. Compl., ECF No. 35, PageID.305, and that the Department "is projected to expend millions of dollars in Medicaid funds in FY 2018 for guardianship fees, the lion's share paid to professional guardians," *id.* at PageID.315. Moreover, the plaintiffs believe that "some professional guardians may receive more than $2,500 per year in Medicaid-funded guardianship fees" and that "some professional guardians" are perpetrating Medicaid fraud." *Ibid.* But concerning the public administrator defendants, the plaintiffs allege only:

> If a health care provider bills Medicaid for tests or other services that the provider has not performed, the provider is perpetrating Medicaid fraud. In parallel fashion, if any professional guardian, including but not limited to [the Public Administrators], is paid fees through Medicaid but does not perform his or her statutory duties or otherwise violates state or federal law, he or she has committed Medicaid fraud.

*Id.* at PageID.322.

The magistrate judge correctly found that the allegations were insufficient because "[t]he plaintiffs d[id] not allege, with specificity, any examples of false or fraudulent claims submitted by the Public Administrators to the state or federal government." R&R re; Mot. to Dismiss, ECF No. 66, PageID.873. In fact, the plaintiffs did not accuse the public administrators of submitting any false or fraudulent claims. Instead, they merely alleged that "if" the public administrators neglected their statutory duties but received Medicaid funds, then they would have committed Medicaid fraud. It is clear, then, that the magistrate judge correctly dismissed the claim against the public administrators. But whether the claims were asserted for an improper purpose, or so lacked any evidentiary support that the proponents should be sanctioned, is another matter.

Under Rule 11(b)(1), the Court has the discretion to determine whether an "improper purpose" exists. *See Kircher v. Charter Twp. of Ypsilanti*, No. 07-13091, 2007 WL 4557714, at *

3 (E.D. Mich. Dec. 21, 2007) (citations omitted). "In making this determination, the Court applies an objective standard of reasonableness." *Ibid.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)).

Although the claims against the public administrators lacked merit, the magistrate judge found no improper purpose in bringing them, or a motive to increase litigation costs, concluding that "Geller was motivated by a sincere desire to expose and correct subjectively-perceived deficiencies in Michigan's guardianship system." R&R on Mot. to Dismiss, ECF No. 77, PageID.1017. Neither does it appear that the plaintiffs asserted their claims to "increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The public administrator defendants contend that the Magistrate Judge improperly analyzed the issue under a subjective good-faith standard, as opposed to the requisite objective standard. But that does not appear to be the case. A reasonable, impartial observer can conclude that the plaintiffs filed their claims out of a genuine belief in their cause. Further, no signs of impropriety are apparent.

The public administrator defendants insist that *In re Kunstler*, 914 F.2d 505 (4th Cir. 1990), an out-of-circuit decision, should govern. In that case, the court upheld sanctions against the plaintiffs — who were defendants in an ongoing state criminal prosecution — for filing a multi-count complaint under 42 U.S.C. § 1983 against three sheriffs, district attorneys, state bureau of investigation officers, and the Governor and Attorney General of North Carolina. The plaintiffs sought to enjoin the state prosecution and recover damages. In light of the plethora of claims levied, and the lack of foundation for all of them, the district court concluded that the plaintiffs' counsel "never intended to litigate th[e] §1983 action and that counsel filed it for publicity, to embarrass state and county officials, to use as leverage in criminal proceedings, to obtain discovery for use in criminal proceedings, and to intimidate those involved in the prosecution." *Id.* at 519.

That does not appear to be Geller's motivation here. Unlike the plaintiffs in *Kunstler*, who had an obvious motive to stall criminal proceedings against them, there is no apparent improper reason for Geller to sue Michigan officials for abusing the guardianship system. An incompetent filing is not necessarily a frivolous filing that will earn sanctions for an improper purpose. Courts levying sanctions under Rule 11(b)(1) generally are able to point to a tangible, improper reason for the frivolous filings. *See*, *e.g.*, *Danvers v. Danvers*, 959 F.2d 601, 604 (6th Cir. 1992) (affirming Rule 11 sanctions where the district court found that the plaintiff filed the action against his ex-wife to harass her and increase her litigation costs unnecessarily where "even cursory research would have revealed that his cause lacked merit"). Here, there is no evident motive for Geller to file these claims aside from his deeply rooted belief that injustice shrouds Michigan's guardianship system.

The public administrator defendants disagree and point to a letter that Geller sent after the administrators filed their objections to this report and recommendation. Geller sent an email reprising his allegations against the public administrators (which are not part of the second amended complaint) to all members of the Elder Law section of the State Bar of Michigan. Letter, ECF No. 83-2, PageID.1229. That certainly does not confirm Geller's purity of motive, but the email was not as improper as the public administrators make it out to be. Geller did not divulge any confidential or otherwise sealed information — he relayed a status update on proceedings that are within the public record. And although the public administrator defendants argue that the email is evidence that Geller filed the complaint as a ruse to harass them, that is not the only conclusion to draw. It is more likely that Geller is genuinely motived to change the guardianship system and shed light on the perceived abuses. His filings, for instance, are not designed to extort a settlement

or seek vengeance of some sort. Instead, as the magistrate judge concluded, it appears that Geller sincerely desires to expose and correct deficiencies in Michigan's guardianship system.

The public administrators also argue that the Court should sanction Geller for violating Rule 11(b)(3). Under Rule 11(b)(3), when a plaintiff does not presently have evidentiary support for an asserted fact, he or she must state that he or she is likely to obtain such support after "further investigation or discovery." Fed. R. Civ. P. 11(b)(3). The 1993 Advisory Committee Notes make clear that this requirement allows plaintiffs to plead allegations on "information and belief" when an "inquiry reasonable under the circumstances" supports that belief but does not yield the required evidentiary support. *See Zuk* 103 F.3d at 299. That is what the plaintiffs did.

The plaintiffs attempted to provide evidence of fraud but failed. Geller primarily asserted unsupported allegations that did not "specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v HCA-The Healthcare Co.*, 477 F.3d 873, 877 (6th Cir. 2006). Geller subsequently admitted to the shortcomings in his notice of voluntary dismissal, stating "[the] public administrators aver there is a lack of specific evidence underlying the claims of Medicaid fraud," but "relevant information . . . is only available through discovery." Notice of Vol. Dismissal, ECF No. 68, PageID.909. To comply with Rule 9(b), Geller should have included specific factual allegations against the public administrators in the second amended complaint or at least sought leave to amend the complaint again. However, Geller did dedicate a section of the plaintiffs' response to the defendants' motion to dismiss to alleged "specific breaches of duty." Plfs.' Resp. to Mot. to Dismiss, ECF No. 60, PageID.62-83. The public administrators are correct that Geller cannot cure the complaint's factual deficiencies by asserting new factual allegations in the response brief. *See, e.g.*, *Jocham v. Tuscola County*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003) ("The pleading contains so such allegation, and the plaintiffs may not amend their complaint

through a response brief."). But Geller's attempt to do so cuts against a finding that the evidentiary deficiency warrants sanctions against him.

The plaintiffs have undoubtedly failed to demonstrate the merit of their claims, and this Court should not entertain the idea of reinstating them as the plaintiffs' request. In fact, it cannot do so because the plaintiffs already filed a notice of appeal of the dismissal, which divested the Court of its control over the matter.

The public administrator defendants' third objection will be overruled.

III.

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the motion papers and applied the correct law in reaching his conclusion. The Court has considered all of the public administrator defendants' objections to the report and finds them to lack merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation (ECF No. 77) is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objections and amended objections (ECF No. 81) are **OVERRULED**.

It is further **ORDERED** that the public administrator defendants' motion for sanctions (ECF No. 61) is **DENIED**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Date:  November 18, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on November 18, 2019.

                        s/Susan K. Pinkowski
                        SUSAN K. PINKOWSKI